IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**　　　　　CASE NO. 3:21 CR 637

　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**REX ALLEN GRAY, JR.,**
　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION AND**
　　　Defendant.　　　　　　　　　　　　**ORDER**

### INTRODUCTION

Currently pending before the Court is *pro se* Defendant Rex Allen Gray's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (Doc. 34). The Government responded in opposition (Doc. 36). For the reasons discussed below, Gray's motion is denied.

### BACKGROUND

In September 2021, Gray was indicted on one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a). (Doc. 1).

On May 5, 2022, Gray pleaded guilty to the indictment pursuant to the terms of a written plea agreement. *See* Doc. 13.

On September 26, 2022, this Court sentenced Gray to a term of 87 months' imprisonment followed by five years of supervised release. (Doc. 24). The Court twice granted motions by Gray to postpone his self-surrender date based on medical treatment for a cervical spine condition. *See* Non-document orders dated October 31, 2022, and November 30, 2022.

Gray now moves this Court for compassionate release, stating:

> I have a degenerative disc disease for which I need medical treatment that I am unable to get through the BOP. The lack of treatment is causing serious permanent muscle structure loss in the form of atrophy and pain. For 16 months I have needed physical therapy and further treatment which has been ordered by two neurosurgeons and then cancelled by the BOP due to lack of manpower and costs.

(Doc. 34, at 5). He checks boxes indicating there are "extraordinary and compelling reasons" for his release, including that he has "a serious physical or mental condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, and [he is] not expected to recover from this condition." (Doc. 34, at 4). He attaches documentation in support consisting of his administrative requests for relief within the BOP and BOP medical records. (Doc. 34-1).

## DISCUSSION

Gray moves this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). He contends his medical condition and other extraordinary and compelling reasons justify his release. *See* Doc. 34, at 4. The Government responds that (1) Gray does not present an extraordinary and compelling reason to justify the remedy he seeks; and (2) the § 3553(a) factors do not support a sentence reduction. *See* Doc. 36. For the reasons discussed below, the Court denies Gray's motion.

A district court generally lacks authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Title 18 U.S.C. § 3582(c)(1) – the compassionate release statute upon which Gray relies as the basis for his motion – provides:

> **(c) Modification of an imposed term of imprisonment.** --The court may not modify a term of imprisonment once it has been imposed except that--
>
> **(1)** in any case--
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

2

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction; or
>
>> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> **(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

18 U.S.C. § 3582(c). Thus, release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (quotations omitted). District courts "may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others"; but "[i]n granting a compassionate-release motion, district courts must address all three steps." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).[1]

Section 3582(c) does not define "extraordinary and compelling." But the Sentencing Commission recently issued a revised policy statement regarding sentence reductions under 18 U.S.C. § 3582(c)(1)(A). The policy statement identifies six circumstances that, individually or in

---

1. As noted, an inmate must first exhaust all administrative remedies, *see* 18 U.S.C. § 3582(c)(1)(A); however, the Government agrees that it appears Gray has done so here. *See* Doc. 36, at 2; Doc. 34, at 2-3.

3

combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. U.S.S.G. § 1B1.13(B)(1)–(6) (effective November 1, 2023).[2] These are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b). Gray's motion implicates the medical circumstances rationale.

Extraordinary and Compelling Reasons

In his motion, Plaintiff checks boxes indicating there are extraordinary and compelling reasons for his release, including that he has "a serious physical or mental condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, and [he is] not expected to recover from this condition." (Doc. 34, at 4).[3] As noted above, he states he has degenerative disc disease and needs medical treatment he is "unable

---

2. Until recently, however, the policy statement set forth in § 1B1.13 was not binding on this Court in evaluating motions for compassionate release filed directly by prisoners. The version of § 1B1.13 in effect until November 1, 2023, was adopted before the First Step Act, and therefore did not account for the fact that defendants are now permitted to file their own motions for compassionate release. The Sixth Circuit had therefore held it was not an "applicable" policy statement under 18 U.S.C. § 3582(c)(1)(A), an "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts [had] discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021). The policy statement effective November 1, 2023 now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (emphasis added). As such, it is now an "applicable" policy statement with which any sentence reduction must be "consistent". 18 U.S.C. § 3582(c)(1)(A); *see also, e.g.*, *United States v. Hill*, 2024 WL 2089011, at *2-3 (N.D. Ohio) (finding policy statement at § 1B1.13 is now applicable to defendant-filed motions).

3. The language cited in Plaintiff's motion largely mirrors that in U.S.S.G. § 1B1.13(B)(1)(b).

to get through the BOP". He states this lack of treatment is "causing serious permanent muscle structure loss in the form of atrophy and pain" and that he has "needed physical therapy and further treatment which has been ordered by two neurosurgeons and then cancelled by the BOP due to lack of manpower and costs." *Id.*

At the outset, the Government is correct in asserting that Gray attaches no support for his claim that required treatment has been cancelled by the BOP. Although Gray attaches documentation that he was referred to physical therapy (Doc. 34-1, at 53), and for injections (Doc. 34-1, at 54), he presents no evidence that such treatment was cancelled. Nor does he present any evidence for his conclusory allegation that he needs treatment he is "unable to get through the BOP".

Further, the Court has considered the criteria Plaintiff cites: "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover". U.S.S.G. § 1B1.13(b)(1)(B)(ii). "Courts have traditionally interpreted 'the ability of the defendant to provide self-care' to mean one's ability to independently perform activities of daily living and provide basic personal care (e.g., use the toilet, shower, ambulate, eat, etc.)." *United States v. Bolze*, 2020 WL 6151561, at *9 (E.D. Tenn.) (collecting cases); *see also United States v. Jarvis*, 2024 WL 3039952, at *2 (N.D. Ohio) ("Self-care refers to something more basic—the ability to independently carry out standard daily living tasks such as dressing, eating, or taking prescribed medication.")

But the Court finds Gray has not presented evidence that his ability to provide self-care within the correctional environment is "substantially diminished". Although he has been diagnosed with a serious spinal condition, it does not appear that he cannot carry out activities of daily living.

5

Gray's attached medical records similarly do not indicate that he cannot independently manage his medications, ambulate, or provide basic personal care.

The Court has also considered § 1B1.13(b)(1)(C): "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death". For the same reasons noted above, Gray has not presented evidence to satisfy this requirement.

The Court finds Gray has not met his burden to establish an "extraordinary and compelling" reason for his release. *See, e.g.*, *United States v. DeJournett*, 2024 WL 1580102, at *5 (N.D. Ohio) (denying motion for compassionate release because defendant "failed to carry his burden of demonstrating that he is not being provided with the specialized medical care that he requires").

§ 3553(a) Factors

Even if Gray could clear the initial hurdle of demonstrating an extraordinary and compelling reason, the Court would still deny his motion because the sentencing factors in § 3553(a) do not favor release. *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors).

Specifically, "the nature and circumstances" of Gray's offense were serious and weigh heavily against release. 18 U.S.C. § 3553(a)(1). As indicated in the Presentence Report ("PSR"), in April 2017, through a confidential informant, FBI agents learned Gray was building a bunker in his home to facilitate hiding large amounts of narcotics and money. (Final PSR, Doc. 26, at 3-4). Gray requested $20,000 from the confidential informant, which he stated he would combine with his own $15,000 to purchase a higher quantity of methamphetamine at a lower price. *Id.* at 4. The confidential informant later performed a controlled buy from Gray. *Id.* When Gray was stopped, agents found 56.2 grams of methamphetamine and a firearm and ammunition in his vehicle. *Id.* at

6

4-5. Further, during the search of Gray's residence, agents found 100 grams of methamphetamine and 1.114 grams of heroin. *Id.* at 5. They found the drugs in the hidden "bunker" area of the residence. *Id.*

The Court must consider the goals of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, protecting the public, and deterring Gray from future criminal conduct. 18 U.S.C. § 3553(a)(2). The Court finds ordering Gray's release would undermine each of these sentencing goals.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Gray's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Date: July 8, 2024